# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# MARTINSBURG

**KEVIN EDWARD MOSES,**

    **Petitioner-Defendant,**

v.                                              **Civil Action No. 3:13-cv-170**
                                                 **Criminal Action No. 3:11-cr-47-1**
                                                 **(Groh)**

**UNITED STATES OF AMERICA,**

    **Respondent-Plaintiff.**

## REPORT AND RECOMMENDATION

## I.    INTRODUCTION

On November 22, 2013, Kevin Edward Moses ("Petitioner"), proceeding *pro se*, filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. Civil Action No. 3:13-cv-170, ECF No. 1; Criminal Action No. 3:11-cr-47-1, ECF No. 435. That same day, the Clerk of Court mailed Petitioner a Notice of Deficient Pleading, which informed him that he had twenty-one (21) days to correct his Motion by filing it on the correct form as per Local Rule of Prisoner Litigation Procedure 3.4. ECF No. 439.[1] Petitioner filed his correct form ("Court-Approved Motion") on December 19, 2013. ECF No. 441. On January 3, 2014, Magistrate Judge Seibert entered an Order directing the Government to respond to Petitioner's Motion. ECF No. 443. The Government filed its response on January 31, 2014. ECF No. 445. Petitioner filed a motion for extension of time within which to file his reply [ECF No. 446], which was granted on March 10, 2014. ECF No. 448. Petitioner filed his reply on March 20, 2014. ECF No. 451. On July 7, 2014, Petitioner

---

[1]From this point, all docket numbers refer to entries in Criminal Action No. 3:12-cr-57-2.

filed a motion for leave to amend. ECF No. 456.[2] The motion was granted on December 16, 2014, and the Clerk of Court was directed to file the motion as an amendment. ECF No. 479. On January 29, 2015, the Government was directed to file a supplemental response. ECF No. 484. On February 23, 2015, the Government filed its supplemental response. ECF No. 490.

The undersigned now issues this Report and Recommendation on Petitioner's motion without holding an evidentiary hearing. For the reasons stated below, the undersigned recommends that the District Judge deny and dismiss Petitioner's motion, including his amended motion.

## II.   FACTS

*A.   Conviction and Sentence*

On July 29, 2001, Petitioner was named in nine counts of a twenty-three count indictment which were all based upon violations of the Controlled Substances Act, and more specifically, violations of 21 U.S.C. §§ 846, 841(a)(1) and 860. ECF No. 1. He was arrested on August 1, 2011. Following a detention hearing on August 4, 2011, he was ordered detained. ECF No. 77.

In November 2011, the District Court ordered a mental health evaluation of Petitioner to determine his competency. The evaluation took place at the Metropolitan Correctional Center (MCC) in New York City. The report from the MCC, dated January 18, 2012, found Petitioner competent and possessed of "a rational and factual understanding of the proceedings against him...and can adequately make decisions regarding his legal strategy." At a February 7, 2012 hearing, the District Judge inquired of Petitioner and his counsel whether they wished to contest competency, to which Petitioner responded, "No". ECF No. 379 at 4. The District Judge then found Petitioner competent to stand trial and set trial for April 24, 2012. ECF No. 221.

---

[2]Petitioner refiled his Motion for Leave to Amend on December 15, 2014. ECF No. 477.

On April 12, 2012, Petitioner signed a written plea agreement in which he agreed to plead guilty to Count Thirteen of the Indictment, charging him with aiding and abetting the distribution of approximately 0.53 gram of cocaine base within 1000 feet of a school, in violation of 28 U.S.C. §§ 841(a)(1), 84(b)(1)(C), and 860, as well as 18 U.S.C. § 2. ECF No. 253 at 1. In the agreement, the parties agreed that the maximum penalty Petitioner would be exposed to by virtue of his plea was imprisonment for a period on not less than one and not more than forty years, a fine of $2,000,000.00 and a term of at least six years of supervised release. Id. at 2. The parties also stipulated and agreed that Petitioner's relevant conduct was 211.11 grams of cocaine base and 127 grams heroin. Id. at 3. Petitioner waived his right to appeal and collaterally attack any sentence which was within the maximum provided in the statute of conviction.³ Specifically, Petitioner's plea agreement contained the following language concerning his waiver:

> Defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging all this, and in exchange for the concessions heretofore made by the United States in this plea agreement, Defendant knowingly and voluntarily waives the right to appeal any sentence which is within the maximum provided in the statute of conviction or in the manner in which that sentence was determined on any ground whatever, including those grounds set forth in Title 18, United States Code, Section 3742. **Defendant also waives the right to challenge the sentence or the manner in which it was determined in any collateral attack, including but not limited to, a motion brought under Title 28, United States Code, Section 2255 (habeas corpus).** The United States does not waive its right to appeal the sentence; however, in the event that there would be an appeal by the United States, Defendant's waiver contained in this paragraph will be voided provided Defendant complies with the provisions of Rule 4(b)(1)(A)(ii) of the Federal Rules of Appellate Procedure.

Id. (emphasis added).

Petitioner appeared before now-retired United States Magistrate Judge David J. Joel on April 16, 2012, to enter his plea of guilty. ECF No. 380 At the time of his plea, Petitioner was 36 years old

---

³The maximum provided by the statute is forty years. 21 U.S.C. §§ 841(b)(1)(C); 846.

3

and had completed the ninth grade. Id. at 6. Petitioner testified that he took medication for high blood pressure but was not taking any medicine that affected his ability to understand the proceedings at the plea hearing. Id. at 5:21-25. Subsequently, the following colloquy occurred:

> THE COURT: Do you understand that under the terms of the plea agreement, you are giving up the right to appeal any sentence imposed upon you by the Court, as well as the right to file habeas corpus petitions attacking the legal validity of the guilty plea and the sentence?
>
> THE DEFENDANT: Yes, sir.

Id. at 13:17-23.

Petitioner confirmed his understanding that the written plea agreement contained the full agreement between himself and the Government. (Id. at 14:7-10.) When asked, Petitioner stated that his counsel had adequately represented him, and there was nothing he should have done, or anything that he did not do or anything that he had done improperly regarding his representation. Id. at 29-30: 22-25; 1-4. The Court reviewed all the rights Petitioner was foregoing by entering a plea of guilty. (Id. at 22:19-24:15.) Based on that review, the Court determined that Petitioner understood the consequences of his plea of guilty. Id. at 22:21-23. During the hearing, the Government presented the testimony of Corporal Andrew Edward Evans of the West Virginia State Police to establish a factual basis for the plea. (Id. at 23:5-28:13.)

After hearing Trooper Evans' testimony, Petitioner advised the Court that he was guilty of Count Thirteen of the Indictment. Id. at 28:16-23. Additionally, Petitioner testified under oath that no one had attempted to force him to plead guilty and that his plea was not the result of any promises other than those contained in the plea agreement. (Id. at 28-29:25, 1-9. Petitioner further stated that his counsel had adequately represented him. (Id. at 29:22-24.) In conclusion, Magistrate Judge Joel found that Petitioner was competent to make a plea of guilty, that he had "full knowledge and

4

understanding" of the consequences of entering a plea of guilty; and that there was a basis in fact for the tendered plea. Id. at 30:9-14. Petitioner did not object to that finding.

Petitioner appeared before United States District Judge Gina M. Groh for sentencing on February 23, 2013.[4] ECF No. 404. At that time, Judge Groh accepted Petitioner's written plea agreement. Id. at 14:2-5. Petitioner's guidelines called for a term of imprisonment between 262 and 327 months. Id. at 16:24.) Judge Groh sentenced Petitioner to 262 months of incarceration to be followed by six (6) years of supervised release. Id. at 26:21-27:13.

## B.     *Direct Appeal*

Petitioner, by counsel, filed a Notice of Appeal on February 28, 2013, in the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit"). Counsel filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967), questioning whether Petitioner's plea was knowingly and voluntarily entered and whether the district court abused its discretion in sentencing. Petitioner filed a *pro se* supplemental brief raising additional sentencing issues under Alleyne.

The Fourth Circuit did a complete review of the file, including Petitioner's Alleyne issues. On October 3, 2013, the Fourth Circuit affirmed Petitioner's sentence and dismissed his appeal, finding that "Moses' guilty plea and waiver of his appellate rights was knowing, intelligent, and voluntary. The appellate waiver included Moses' right to appeal any sentence imposed, except a sentence above the advisory Guidelines range. Here, the district court sentenced Moses within the advisory Guideline range and, therefore, he has waived appellate review of his sentence." ECF No. 427 at 4.

---

[4]The sentencing hearing was originally scheduled for July 2, 2012, and was subsequently continued on at least two occasions to allow counsel the opportunity to obtain expert testimony regarding Petitioner's competency to enter into the plea agreement, and in particular the impact of lead poisoning during his adolescent period. ECF No. 381. When the sentencing hearing did take place on February 25, 2013, counsel for Petitioner advised the court that despite the expert's best efforts, there would be no issues concerning withdrawal of the guilty plea. ECF No. 404 at 4.

5

C.    *Federal Habeas Corpus*

   1.    **Petitioner's Motion**

In his Court-Approved Motion, Petitioner raises the following claims, all based on the decision in Alleyne:

   1.   Mr. Moses' sentence as it stands does violate his Constitutional rights in light of intervening changes in Supreme Court law;

   2.   Petitioner was prejudiced and was not given similar treatment under the Equal Protection Clause for intervening changes in the law and as his co-defendants;

   3.   Due to intervening changes of law, prosecutorial misconduct has occurred [sic] by its failure to acknowledge and apply the new Supreme Court law while the petitioner was on Direct Appeal; and

   4.   Counsel was ineffective during Direct Appeal stage when he failed to supplement brief was additional new Supreme Court ruling of Alleyne while on the direct in light of Griffith v. Kentucky retroactive procedures.

ECF No. 441 at 5 -10.

   2.    **Government's Response**

In opposition to Petitioner's motion, the Government asserts the following:

   1.   Petitioner has not demonstrated that counsel was ineffective;

   2.   Alleyne does not invalidate the District Courts factual findings that increased Petitioner's sentencing guideline range but did not increase his mandatory minimum sentence; and

   3.   Petitioner entered into a valid plea agreement by which he waived his right to appeal or collaterally attack his sentence.

ECF No. 445 at 10-13.

   3.    **Petitioner's Reply**

In his reply, Petitioner argues that the Pre-Sentence Investigation "exceeded its authority by increasing a defendants [sic] thru the [enhancement technique] without the jury finding or a defendant such as Moses first admitting to them. ECF No. 451 at 3.

4. **Petitioner's Amended Motion to Vacate**

In his amended Motion, Petitioner alleges that his plea was not entered into knowingly, intelligently and with a full understanding of the consequences of his plea and sentence exposure based upon the charged conduct. ECF No. 456 at 1.

5. **Government's Response**

The Government responds that Petitioner's counsel challenged the validity of his guilty plea on direct appeal in the Anders brief, and the Fourth Circuit rejected the argument. Therefore, based on the "mandate rule," the Government argues there can be no question that his plea agreement was knowingly and voluntarily made. ECF No. 490 at 4.

### III. ANALYSIS

A. *Validity of Petitioner's Plea Agreement*

1. **Law Governing Waivers of Direct Appeal and Collateral Attack Rights**

"[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned." Blackledge v. Allison, 431 U.S. 63, 71 (1977). However, the advantages of plea bargains are only secure when "dispositions by guilty plea are accorded a great measure of finality." Id. The Fourth Circuit has recognized that the Government often secures waivers of both appellate and collateral attack rights "from criminal defendants as part of their plea agreement." United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005).

Courts have routinely held that "defendants can waive fundamental constitutional rights such

as the right to counsel, or the right to a jury trial." United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992). Specifically, the Fourth Circuit has held that "a waiver-of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so long as it is 'the result of a knowing and intelligent decision to forgo the right to appeal.'" United States v. Attar, 38 F.3d 727, 731 (4th Cir. 1994) (citations omitted). However, a defendant still retains the right to appellate review on limited grounds, such as when a sentence above the maximum penalty provided by statute is imposed or when a sentence is imposed based on a constitutionally impermissible factor. Id. at 732. Furthermore, the Attar court recognized that a defendant cannot "fairly be said to have waived his right to appeal his sentence" on the ground that he was wholly deprived of counsel during sentencing procedures. Id.

Eleven years later, the Fourth Circuit determined there was no reason to distinguish between waivers of appellate rights and waivers of collateral attack rights. Lemaster, 403 F.3d at 220 n.2. The Fourth Circuit noted that all courts of appeals to have considered the issue have "held that the right to attack a sentence collaterally may be waived so long as the waiver is knowing and voluntary." Id. at 220. The Lemaster court did not address whether the same exceptions that were noted by the Attar court apply to a waiver of collateral attack rights, but it did note that it saw "no reason to distinguish" between the two. Id. at 220 n.2; see also United States v. Cannady, 283 F.3d 641, 645 n.3 (4th Cir. 2000) (collecting cases where the court has determined that waivers of § 2255 rights are generally valid).

The Fourth Circuit has not yet issued a binding decision defining the scope of collateral attack waivers and so has not yet imposed on this Court a standard governing "the extent to which an ineffective assistance of counsel claim can be precluded by a § 2255 waiver." Braxton v. United

8

States, 358 F. Supp. 2d 497, 502 (W.D. Va. 2005).[5]  However, several courts have held that collateral attack waivers should be subjected to the same conditions and exceptions applied to waivers of direct appellate rights.  Cannady, 283 F.3d at 645 n.3 (collecting cases).  Furthermore, most courts of appeals have determined that waivers of collateral attack rights encompass claims "that do not call into question the validity of the plea or the § 2255 waiver itself, or do not relate directly to the plea agreement or the waiver."  Braxton, 358 F. Supp. 2d at 503.

2. **Law Governing Whether a Waiver is Knowing and Intelligent**

First, it is pertinent to note that the Fourth Circuit, in denying Petitioner's appeal, reviewed the record and concluded that the district court had fully complied with the requirements of Rule 11. The Fourth Circuit further concluded that the [Petitioner's] guilty plea and waiver of his appellate rights was knowing, intelligent, and voluntary.  Therefore, to the extent that Petitioner requests this court to review the validity of his plea on its merits, the court is barred from doing so because it was raised and rejected on direct appeal. Boeckenhaupt v. United States, 537 F.2d 1182, 1883 (4th Cir. 1976); see also United States v. Bell, 5 F.3d 64, 66 (4th Cir. 1993)(holding that the mandate rule "forecloses relitigation of issues expressly or impliedly decided by the appellate court."). Furthermore, to the extent that the mandate rule would not apply in this case, it is clear that Petitioner's plea is unassailable.

The Fourth Circuit has held that the determination of whether a waiver of appellate and collateral attack rights is "knowing and intelligent" "depends 'upon the particular facts and circumstances surrounding [its making], including the background, experience, and conduct of the accused.'" Attar, 38 F.3d at 731 (quoting United States v. Davis, 954 F.2d 182, 186 (4th Cir. 1992)).

---

[5]The Fourth Circuit issued an unpublished per curiam opinion affirming the Western District of Virginia's ruling in Braxton.  See United States v. Braxton, 214 F. App'x 271 (4th Cir. 2007) (per curiam).

This determination is often made upon reviewing the "adequacy of the plea colloquy" and determining, in particular, "whether the district court questioned the defendant about the appeal waiver." United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005). However, an ultimate decision is "evaluated by reference to the totality of the circumstances." United States v. General, 278 F.3d 389, 400 (4th Cir. 2002).

### 3. Analysis of Petitioner's Argument that his Plea Agreement is Not Valid

In the instance case, Petitioner cannot sustain his argument that his plea was unknowing and involuntary. During the plea hearing, the Government summarized the terms of the plea agreement, including the statutory maximum penalties of the offense, the stipulations, the sentencing guidelines and the appellate and collateral attack waivers. ECF No. 380 at 8-13. During the Rule 11 colloquy, Petitioner acknowledged that he had reviewed the plea agreement with his counsel before signing it and understood that charges filed against him. Id. at 14-15. The Magistrate Judge then addressed the required elements of a Rule 11 hearing. In particular, Petitioner acknowledged the following:

1. He understood that the maximum penalty under Count 13 was for not less than one year and not more than 40 years imprisonment. Id. at 17.

2. He understood that the sentence imposed might be different than any estimate that he or his counsel determined. Id at 19.

3. He understood that the Court may take into account any relevant conduct. Id.

4. He stipulated and agreed to the total relevant conduct of 211.11 grams of cocaine base and 127 grams of heroin. Id.

10

5. He understood that the Court was not bound by the stipulation, and if the Court did not accept the stipulation, he did not have the right to withdraw his guilty plea. Id. at 19-20.

6. He understood that the Court had the authority to depart from the sentencing guidelines and impose a longer or shorter sentence called for by the sentencing guidelines. Id. at 20.

7. He understood that, if the Court accepted his plea of guilty, and the sentence imposed was longer that he had hoped or expected, he was still bound by his guilty plea and would have no right to withdraw it. Id.

Following the Rule 11 colloquy, the Government set forth a detailed proffer of the facts underlying the charges in the Indictment. Id. at 23-28. Petitioner then pleaded guilty to Count Thirteen of the Indictment. He also affirmed that no one attempted to force or threatened him to plead guilty, and he was pleading guilty on his own free will because he was guilty of the charge. Id. at 28-30. Petitioner denied that anyone promised or predicted the exact sentence that would be imposed . Id. at 29. He confirmed that his attorney had adequately represented him in this matter, [Id.] and when asked if there was anything he felt that his attorney should have done or did improperly, he responded, "No, Sir. No Sir." Id. at 30.

Accordingly, it is clear that the Magistrate Judge took proper steps to ensure Petitioner understood the terms of the plea agreement and voluntarily signed the agreement. "Absent clear and convincing evidence to the contrary, a defendant is bound by the representations made under oath

during a plea colloquy." Fields v. Att'y Gen. Of Maryland, 956 F.2d 1290, 1299 (4th Cir. 1992). See also Mabry v. Johnson, 467 U.S. 504 (1984)("A voluntary and intelligent plea of guilty made by an accused person who has been advised by competent counsel, may not be collaterally attacked.").

## B. Ineffective Assistance of Counsel/*Alleyne*

### A. Standard of Review

The Supreme Court has set forth a two-prong test for determining whether a convicted defendant's claim of ineffective assistance of counsel warrants the reversal of his conviction. Strickland v. Washington, 466 U.S. 668, 687 (1984). First, "the defendant must show that counsel's performance was deficient." Id. Second, "the defendant must show that the deficient performance prejudiced the defense." Id. These two prongs are commonly referred to as the "performance" and "prejudice" prongs. Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992).

To satisfy the "performance" prong, the defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Strickland, 466 U.S. at 687. However, a reviewing court does not "grade" trial counsel's performance, and there is a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." Carter v. Lee, 283 F.3d 240, 249 (4th Cir. 2002). Essentially, the reviewing court must not "second-guess" counsel's performance and must "evaluate counsel's performance 'from counsel's perspective at the time.'" Hunt v. Lee, 291 F.3d 284, 289 (4th Cir. 2002). Furthermore, the standard of reasonableness is objective, not subjective. See Strickland, 466 U.S. at 688.

To satisfy the "prejudice" prong, the defendant must demonstrate that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. Therefore, if counsel's errors have no effect on the judgment, the conviction should not be reversed. See id. at 691. A defendant who alleges ineffective assistance of counsel following a guilty plea has

12

an even higher burden: "he must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988). The Fourth Circuit has recognized that if a defendant "cannot demonstrate the requisite prejudice, a reviewing court need not consider the performance prong." Fields, 956 F.2d at 1297.

The Fourth Circuit has set forth two categories of decisions made by trial counsel. First, there are "personal" decisions that require consent from the defendant, such as the decision to enter a guilty plea, the decision to waive a trial by jury, the decision to appeal, and the decision of whether to testify at trial. See Sexton v. French, 163 F.3d 874, 885 (4th Cir. 1998). The second category includes decisions that "'primarily involve trial strategy and tactics,' such as 'what evidence should be introduced, what stipulations should be made, what objections should be raised, and what pre-trial motions should be filed.'" Id. (quoting United States v. Teague, 953 F.2d 1525, 1531 (11th Cir. 1992)). Accordingly, "[t]here is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect." Harrington v. Richter, 131 S. Ct. 770, 790 (2011) (citations and internal quotation marks omitted).

As noted above, Petitioner's plea agreement contained a waiver of his appellate and collateral attack rights. (Docket No. 122 at 4.) As to ineffective assistance of counsel claims raised regarding an attorney's action, or lack thereof, after the plea agreement, the Fourth Circuit has stated that the right to challenge a sentence on the ground that "the proceedings following entry of the guilty plea–including both the sentencing hearing itself and the presentation of the motion to withdraw their pleas–were conducted in violation of their Sixth Amendment right to counsel" is not waived by a general waiver of appellate rights contained in the plea agreement. United States v. Attar, 38 F.3d 727, 732-33 (4th Cir. 1994). Therefore, "upon first blush it appears that [such] claims arising after the

13

guilty plea and/or during sentencing are not barred by a general waiver of appeal rights." Oden v. United States, Civil No. 3:13-cv-93, Criminal No. 3:11-cr-56, 2014 WL 2462993, at *8 (N.D. W. Va. June 2, 2014.) Here, because Petitioner is challenging counsel's actions at sentencing and on appeal, his claim is not barred by his waiver.

Petitioner relies heavily on the United States Supreme Court decision in Alleyne. In that case, a defendant was convicted by a jury of using or carrying a firearm in relation to a crime of violence under § 924(c)(1)(A). At sentencing, the district judge determined that the defendant had brandished the firearm and sentenced the defendant to a seven-year sentence based upon a mandatory minimum in accordance with the brandishing finding. 133 S.Ct. at 2151. The United States Supreme Court held that the brandishing determination by the sentencing judge was improper because any factual issue triggering a statutory mandatory minimum sentence must be submitted to a jury, rather than determined by a judge at sentencing, because "the core crime and the fact triggering the mandatory minimum sentence together constitute a new, aggravated crime, each element of which must be submitted to a jury." Id, at 2162.

This decision extended the Supreme Court's prior holding in Apprendi v. New Jersey, 530 U.S. 466 (2000), in which the Court found that any fact which increases the statutory maximum penalty for a crime as applicable to a specific defendant must be submitted to and decided by a jury. See Simpson v. United States, No. 13-2373 2013 U.S. App. LEXIS 12902 *1 (7th Cir. July 10, 2013)(noting that Alleyne is an extension of Apprendi).

The Alleyne decision was issued on June 17, 2013, approximately four months after his sentencing hearing, but while Petitioner's appeal was pending. Although Petitioner appears to allege that trial counsel was ineffective at sentencing for failing to raise Alleyne, one cannot expect counsel to foresee the future. Accordingly, the undersigned has confined his analysis to whether counsel was

14

ineffective for not raising Alleyne on appeal. Because Alleyne is not applicable, the undersigned finds that appellate counsel was not ineffective.

First, the undersigned notes that Alleyne does not apply to Petitioner's case because, by entering into a plea agreement, Petitioner waived his right to a jury trial. By doing so, Petitioner "waived his right for a jury to make sentencing determinations beyond a reasonable doubt." Newlen v. United States, Nos. 5:13-cv-112, 5:11-cr-24, 2014 WL 1787779, at *3 (N.D. W. Va. May 5, 2014) (alteration in original); see also Grantham v. United States, Nos. 5:13-cv-104, 5:10-cr-37, 2014 WL 296937, at *3-4 (N.D. W. Va. Jan. 27, 2014) (finding same).

Furthermore, Alleyne has no application because Petitioner's sentence was imposed pursuant to the Guidelines Manual and not a statutory determination. Here, Petitioner pleaded guilty to Count Thirteen of the Indictment, which reads as follows

> On or about October 15, 2009 at approximately 8:22 P.M., in Martinsburg, Berkeley County, within the Northern District of West Virginia, the defendants, **ROBERT ROOSEVELT FISHER AND KEVIN EDWARD MOSES, aka "FATS,"** aided and abetted by each other, did unlawfully, knowingly, intentionally, and without authority distribute, within 1,000 feet of the real property comprising Winchester Avenue Elementary School, approximately 0.53 grams of cocaine base, also known as crack, a Schedule II narcotic drug-controlled substance, as designated by Title 21, United States Code, Section 812(c), Schedule II(a)(4), in exchange for $150.00, to a person known to the Grand Jury, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C), 860 and Title 18, United States Code, Section 2.

ECF No. 2 at 14.

Under the Fair Sentencing Act of 2010, Petitioner's criminal activity involved a marijuana equivalency of 880.87 kilograms, and as specified in the Drug Quantity Table under § 2D1.1(c)(5), and his base offense level was 30 for an offense involving at least 700 kilograms, but less than 1,000 kilograms of marijuana. Additionally, because the offense to which Petitioner pleaded guilty occurred near a protected location, one level was added pursuant to § 2D1.2(a)(2) for an adjusted base offense

level of 31.

As a result of the independent investigation of the Probation Department, the presentence reported included guidelines enhancements of four levels for being a leader/organizer and another two levels for using a minor to distribute drugs. Therefore, the presentence report concluded that Petitioner's total offense level was 37, his criminal history category was V and the guideline range for imprisonment was 324 to 405 months.

During the sentencing hearing, the Court referred to the investigation and testimony provided by numerous witnesses and concluded that Petitioner was the head of the conspiracy. In reaching this conclusion, the Court found that Petitioner provided cocaine base and heroin to several individuals for further distribution. The Court also found that Petitioner utilized his underaged girlfriend to assist with the distribution in the Martinsburg area, and he also utilized several veterans who were named codefendants to act as runners and distributors. Finally, the Court found that at least two of the codefendants also served as protection for the minor female. Accordingly, the Court found that Petitioner was an organizer or leader of criminal activity involving five or more participants, and therefore, a four level enhancement was warranted. ECF No. 404 at 14-15.

In addition, the Court found that Petitioner used a person less than 18 years of age to commit the offense, or assist in avoiding detection of or apprehension for the offense. In particular, the Court noted that the case involved a minor, who as early as age sixteen had sold illegal substances for the Petitioner. The Court further noted that her testimony was on the record from proceedings before Judge Bailey. Therefore, the Court found that another two level enhancement was warranted. ECF No. 404 at 15.

Finally, although the presentence report did not recommend that Petitioner receive a two-level reduction for acceptance of responsibility, the Court found such a reduction appropriate after listening

16

to arguments at the sentencing hearing. Accordingly, with the two-level reduction for acceptance of responsibility, Petitioner's total offense level was 35. Petitioner's criminal history category was a V, based on 11 points. ECF No. 404 at 16. Accordingly, the guidelines called for imprisonment in the range of 262 to 327 months. The Court sentenced Petitioner to 262 months.

Because <u>Alleyne</u> does not apply to this matter, and because Petitioner entered into a valid plea agreement, by which he waived his right to collaterally attack a sentence within the statutory maximum of forty years, he is precluded from challenging his sentence in this § 2255 based on ineffective assistance of appellate counsel. Likewise, again because <u>Alleyne</u> has no application, any allegation that prosecutorial misconduct occurred by failing to acknowledge or apply the holding of that case on direct appeal, is also foreclosed.                                                                                                                                              .

## C. *Equal Protection*

Petitioner alleges that he was denied equal protection. Although Petitioner does not expound on this allegation with any particularity, the undersigned has assumed that Petitioner is referring to the sentences imposed on his codefendants. On January 27, 2012, Norman Jeffrey Jordan, defendant two in the indictment, pleaded guilty to Count Fourteen, and on May 10, 2012, was sentenced to 51 months imprisonment. On December 14, 2011, Donnell Sylvester Parker, defendant three, pleaded guilty to Count Seven of the indictment and on May 10, 2012, was sentenced to 120 months imprisonment. On February 9, 2012, Elmer Burkes, defendant four, pleaded guilty to Count Nineteen and on May 10, 2012, he was sentenced to 96 months imprisonment. On September 30, 2011, Robert Fisher, defendant five, pleaded guilty to Count Thirteen and on February 2, 2012, was sentenced to 84 months imprisonment. Finally, on December 20, 2011, Jerome Cunningham, defendant six, pleaded guilty to Count Sixteen and on May 6, 2012, was sentenced to five years supervised probation.

"A criminal sentence violates the Equal Protection Clause only if it reflects disparate treatment

of similarly situated defendants." United States v. Pierce, 409 F.3d 228 (4th Cir. 2005). Furthermore, "[a] district court is not required to consider the sentences of co-defendants, and it is well settled that codefendants and even coconspirators may be sentenced differently for the same offense." Id. Finally, a defendant receiving a harsher sentence than codefendants in the case does not provide a basis for vacating his sentence. United States v. Avalon, 462 Fed. Appx. 378 (4th Cir. 2012).

While Petitioner admittedly received a sentence that was more than twice that imposed on any of his codefendants, that sentence differential alone does not rise to the level of an equal protection violation. Petitioner has made no showing that any of his codefendants were similarly situated in terms of the sentencing guidelines, and therefore, he has failed to meet his burden of showing disparate treatment.[6]

## IV.   RECOMMENDATION

For the foregoing reasons, the undersigned recommends that Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody and Amended Motion (Civil Action No. 3:13-cv-170, ECF Nos. 1 & 11); (Criminal Action No. 3:11-cr-47-1, ECF Nos. 435 & 480) be **DENIED** and **DISMISSED WITH PREJUDICE**.

Within **fourteen (14) days** after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Gina M. Groh, Chief United States District Judge.

---

[6]The undersigned notes that Petitioner alleges that he "was prejudiced & was not given similar treatment under the Equal Protection Clause for intervening changes in the law as his codefendants." ECF No. 441 at 6. Although Petitioner does not argue the same explicitly, the undersigned assumes that he is referring to the Alleyne decision. However, because each of his codefendants was sentenced no later than May 12, 2012, it is clear that the decision in Alleyne, which was not issued until June 17, 2013, could not have had an impact on those sentences.

Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation.  28 U.S.C § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208(1984).

      The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.  The Court further directs the Clerk of the Court to mail a copy of this Report and Recommendation to the *pro se* Petitioner, Kevin Edward Moses, by certified mail, return receipt requested, to his last known address as reflected on the docket sheet..

      DATED: October 16, 2015

                                    */s Robert W. Trumble*
                                ROBERT W. TRUMBLE
                                UNITED STATES MAGISTRATE JUDGE